UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA BAXTER, | |
| Plaintiff, | No. 2:24-cv-00827-TLN-JDP |
| v. | |
| MAGIC DARTS, INC., a California Corporation; JOHN A. BAXTER, JR., an individual; KELLY BAXTER, an individual; and DOES 1-10, | **ORDER** |
| Defendants. | |

This matter is before the Court on Defendants Magic Darts, Inc. ("MD"), John A. Baxter, Jr. ("John"), and Kelly Baxter's ("Kelly") (collectively, "Defendants") Motion to Dismiss. (ECF No. 6.) Plaintiff Laura Baxter ("Plaintiff") filed an opposition. (ECF No. 9.) Defendants filed a reply. (ECF No. 11.) For the reasons set forth below, Defendants' motion is GRANTED in part and DENIED in part.

///

///

///

///

///

///

1

1    **I.      FACTUAL AND PROCEDURAL BACKGROUND**

2         The instant action arises from an alleged breach of business contracts between Plaintiff

3    and Defendants.  (*See* ECF No. 1-2 at 7–29.)

4         In 2002, Plaintiff alleges she entered into an oral agreement with Defendants, under which

5    Plaintiff was to have a 50% interest in MD, receive a 3% commission on all sales after shipping

6    and handling, and earn a $500 weekly salary as compensation for her efforts creating and

7    managing MD's website ("2002 Oral Agreement").  (*Id*. ¶ 22, 24, 25.)

8         In March 2021, Defendants presented Plaintiff with a letter which contained an

9    employment offer that her employment with MD would "be at [her] discretion only ever" ("2021

10   Employment Contract").  (*Id*. ¶ 34.)  In July 2021, Plaintiff alleges she spoke with Defendants

11   regarding the 2021 Employment Contract, and Defendants represented that Plaintiff would have

12   continued employment and that she could not be terminated for any reason.  (*Id*.)

13        That same month, Defendants allegedly instructed Plaintiff's son to travel to Las Vegas to

14   ensure Plaintiff signed a shareholder redemption agreement ("Shareholder Agreement"), under

15   which Plaintiff was to have only a 10% interest in MD, and have Plaintiff acknowledge the 2021

16   Employment Contract.  (*Id*. ¶ 37.)  Plaintiff alleges her son told her failure to sign the Shareholder

17   Agreement and agree to the 2021 Employment Contract would lead to the dissolution of her

18   interest in MD.  (*Id*. ¶ 38.)  Plaintiff's son urged her not to be greedy, asserting her 10% interest

19   was worth $1,000,000 based on MD's $10,000,000 value.  (*Id*.)  Plaintiff alleges based on her

20   son's representations, she signed the Shareholder Agreement.  (*Id*.)

21        Plaintiff alleges that beginning in May 2022, she could no longer access information

22   which was essential to enable her to perform her work and her access to software was revoked

23   multiple times.  (*Id*. ¶ 42.)  In November 2022, Defendants switched their selling platform to

24   Shopify, and Plaintiff alleges she never received Shopify training and was denied administrative

25   privileges to Shopify.  (*Id*. ¶ 45.)  Plaintiff alleges that in February 2023, she was unable to access

26   her email accounts.  (*Id*. ¶ 46.)  Plaintiff alleges being locked out of MD's online platforms

27   prevented her from performing any meaningful work.  (*Id*. ¶ 47.)

28   ///

Around April 3, 2023, Defendants terminated Plaintiff for failing to access Shopify since February 8, 2023, and for not providing meaningful work.  (*Id*. ¶ 48.)  Plaintiff alleges that around the same time, she received a letter from Defendants stating her interest in MD was valued at $246,619, based on a company valuation of $2,466,193.99.  (*Id*. ¶ 49.)  After her termination, Plaintiff alleges she learned her commission payout included deductions for shipping costs, returns, loyalty point orders, and the cost of goods.  (*Id*. ¶ 50.)  Plaintiff alleges Defendants did not inform her of any changes to the commission structure before her termination.  (*Id*.)

Throughout her employment, Defendants issued Plaintiff an annual 1099 for the services she provided.  (*Id*. ¶ 52.)  Plaintiff alleges Defendants used company funds to buy real property for personal use and transferred company assets into their personal names or entities they control, intending to devalue MD.  (*Id*. ¶¶ 54–55.)  Apart from the K1 Plaintiff received in August 2022, Plaintiff alleges she was never given any financial statements or records related to the business.  (*Id*. ¶¶ 43, 51.)  Plaintiff further alleges, despite being a shareholder, she was never included in any annual board meetings or presented with any information as it related to the business being conducted in the board meetings.  (*Id*. ¶ 39.)

On May 12, 2023, Plaintiff filed the operative Complaint in Sacramento County Superior Court against Defendants.  (*See* ECF No. 1-2 at 7–29.)  The Complaint alleges the following claims: (1) breach of employment contract; (2) breach of the implied covenant of good faith and fair dealing; (3) breach of fiduciary duty; (4) constructive fraud; (5) intentional misrepresentation; and (6) negligent misrepresentation.  (*See id*.)  On March 18, 2024, Defendants removed the action to this Court based on diversity jurisdiction.  (ECF No. 1 at 3–4.)  On April 8, 2024, Defendants filed the instant motion to dismiss.  (ECF No. 6.)

## II.    STANDARD OF LAW

A motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).  Under notice pleading in

1  federal court, the complaint must "give the defendant fair notice of what the . . . claim is and the

2  grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal

3  citation and quotations omitted). "This simplified notice pleading standard relies on liberal

4  discovery rules and summary judgment motions to define disputed facts and issues and to dispose

5  of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

6      On a motion to dismiss, the factual allegations of the complaint must be accepted as true.

7  *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court must give the plaintiff the benefit of every

8  reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail

9  Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege

10  "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to

11  relief." *Twombly*, 550 U.S. at 570 (internal citation omitted).

12      Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

13  factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

14  While Rule 8(a) does not require detailed factual allegations, "it demands more than an

15  unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A

16  pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

17  elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

18  ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

19  statements, do not suffice."). Thus, "[c]onclusory allegations of law and unwarranted inferences

20  are insufficient to defeat a motion to dismiss" for failure to state a claim. *Adams v. Johnson*, 355

21  F.3d 1179, 1183 (9th Cir. 2004) (citations omitted). Moreover, it is inappropriate to assume the

22  plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws

23  in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State

24  Council of Carpenters*, 459 U.S. 519, 526 (1983).

25      Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough

26  facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim

27  has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

28  reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

680.  While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully."  *Id.* at 678.  This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Thus, only where a plaintiff fails to "nudge [his or her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed.  *Id.* at 680 (internal quotations omitted).

In ruling on a motion to dismiss, a court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201 or incorporated by reference. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'"  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)); *see also Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile).  Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint." *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

### III.    ANALYSIS

Defendants move to dismiss Plaintiff's Complaint in its entirety.  (ECF No. 6 at 1.)  The Court will address each claim in turn.

#### A.    Claim One (Breach of Employment Contract)

Plaintiff alleges Defendants breached two separate contracts: (1) the 2002 Oral Agreement and (2) the 2021 Employment Contract.  (ECF No. 1-2 at 20–21.)  Defendants argue Plaintiff's breach of contract claim as it relates to the 2002 Oral Contract is barred by the statute of

1    limitations and as it relates to the 2021 Employment Contract fails to plead sufficient facts.  (ECF

2    No. 6-1 at 14, 16.)  The Court will address each argument in turn.

3         i.  *Statute of Limitations as to the 2002 Oral Agreement*

4      Plaintiff alleges Defendants breached the 2002 Oral Contract by fraudulently inducing her

5    into giving up 40% interest in MD and by failing to distribute her commission as agreed upon.

6    (ECF No. 1-2 ¶ 50, 61.)

7      Defendants argue the statute of limitations bars Plaintiff's claim as to the 2002 Oral

8    Contract because she had constructive notice of any potential breach as early as 2002, when she

9    asserts Defendants failed to provide her a K1 for the company.  (ECF No. 6-1 at 15.)  Defendants

10   note that despite allegedly owning 50% of the company for two decades, Plaintiff never requested

11   the company's books or records, attended shareholders' or board meetings, or received a K1

12   form.  (*Id*.)  Defendants argue these facts show Plaintiff had reasonable suspicion of a breach as

13   early as 2002 but chose to ignore it.  (See *id*.)

14     In opposition, Plaintiff does not directly respond to Defendant's argument that Plaintiff

15   had notice of a potential breach as early as 2002.  (*See* ECF No. 9.)  Instead, Plaintiff states the

16   contract was breached in July 2021 when she was fraudulently induced into signing the

17   Shareholder Agreement and in 2023 when her employment was terminated.[1]  (*Id*. at 11–12.)

18   Plaintiff argues at that time, her 50% interest in MD was not honored and she became aware of

19   Defendants' failure to distribute her commission as agreed upon.

20     In reply, Defendants argue Plaintiff ignores the allegations in her Complaint which

21   indicate her knowledge of the breach as of 2002, when Defendants first failed to provide her with

22   a K1, began excluding her from company board and shareholder meetings, refused to provide her

23   with financial statements or records related to MD's business, and began withholding

24

---

25   [1] Plaintiff also argues in a conclusory fashion that because she claims that Defendants
fraudulently induced Plaintiff into signing the 2021 Shareholder Agreement, the statute of
26   limitations should begin to run from the date the fraudulent statements were made pursuant to
Cal. Civ. Proc. Code § 337.  (ECF No. 9 at 12.)  Plaintiff's argument, however, is devoid of any
27   substantial analysis as why her claim is an action based upon the rescission of a contract, rather
than a clam for which rescission may be an equitable remedy.  As such, the Court does not
28   address Plaintiff's argument.

1  information.  (ECF No. 11 at 4–5.)  Defendants further argue that while Plaintiff appears to rely

2  on the delayed discovery rule alleging she did not discover a breach until April 2023, Plaintiff has

3  not plead sufficient facts supporting its application.  (*Id*. at 5.)

4      A district court may dismiss a claim under Rule 12(b)(6) on the ground that it is barred by

5  the applicable statute of limitations when "the running of the statute is apparent on the face of the

6  complaint."  *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006) (citation

7  omitted); *accord ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014)

8  ("Dismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the

9  defendant shows some obvious bar to securing relief on the face of the complaint.").  "[A]

10  complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set

11  of facts that would establish the timeliness of the claim."  *Supermail Cargo, Inc. v. United States*,

12  68 F.3d 1204, 1207 (9th Cir. 1995) (citation omitted); *Von Saher v. Norton Simon Museum of Art*

13  *at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010).

14      Here, Defendants fall short of showing an obvious bar to securing relief on the face of the

15  Complaint such that dismissal of Plaintiff's breach of contract claim as to the 2002 Oral Contract

16  based on an affirmative defense is warranted.  While Defendants generally argue that Plaintiff

17  should have been on notice of a potential breach as early as 2002, Defendants fail to articulate

18  how or why Defendants' failure to provide Plaintiff with MD's financial records constitutes

19  notice or provide any authority in support of its contention.

20      Construing the allegations in the light most favorable to Plaintiff, the Court finds

21  Plaintiff's breach of contract claim as to the 2002 Oral Contract is not time-barred.  Specifically,

22  Plaintiff alleges that in July 2021, Defendants presented Plaintiff with the Shareholder

23  Agreement, which Plaintiff executed and effectively decreased her interest in MD by 40%.  (*Id*. ¶

24  37.)  At that point, Plaintiff had reasonable notice of Defendants' breach of the 50% ownership

25  agreement and her injury.  *See Vahora v. Masood*, No. 1:16-CV-1624-LJO-SKO, 2017 WL

26  1213423, at *7–8 (E.D. Cal. Apr. 3, 2017) (finding a breach occurred when defendants refused to

27  recognize the plaintiff's 60% ownership interest); *see also Gen. Elec. Co. v. Wilkins*, No. 1:10-

28  CV-00674-OWW, 2011 WL 902036, at *3 (E.D. Cal. Mar. 15, 2011) (holding the statute of

1   limitations began when the defendant first began to affirmatively assert an ownership interest

2   adverse to the plaintiff's interest).  Plaintiff had notice of the potential breach in July 2021 and

3   filed her action in May 2023, within the two-year statute of limitations.  *See* Cal. Civ. Proc. Code

4   § 339(1), 3.  Thus, the statute of limitations does not bar Plaintiff's breach of contract claim with

5   respect to the 2002 Oral Contract.  Further, because Plaintiff filed her action within the two-year

6   statute of limitations, application of the delayed discovery rule is not necessary.

7         Accordingly, the Court DENIES Defendants' motion to dismiss Plaintiff's breach of

8   contract claim with respect to the 2002 Oral Contract.

9             *ii.*    *Failure to State a Claim as to the 2021 Employment Contract*

10        Plaintiff alleges Defendants breached the 2021 Employment Contract by terminating her

11   employment in April 2023.  (ECF No. 1-2 ¶ 62.)

12        Defendants argue there was no breach of the 2021 Employment Contract because

13   Plaintiff's employment was at-will and Defendants were entitled to terminate Plaintiff at any

14   time.  (ECF No. 6-1 at 16–17.)  Defendants support this assertion by noting the 2021

15   Employment Contract did not specify an employment term and thus, was for "permanent

16   employment."  (*Id.*)

17        In opposition, Plaintiff argues the presumption that employment is generally at-will can be

18   overcome by either an express or implied agreement and contends here, there was an implied

19   agreement.  (ECF No. 9 at 13.)  Plaintiff further argues the totality of the circumstances

20   surrounding her employment with Defendants leads to the plausible inference that Plaintiff's

21   employment could only be terminated for cause and that there was an agreed upon contract under

22   which Plaintiff would have continued employment as long as she continued to perform her duties

23   and responsibilities.  (*Id.* at 14.)  Specifically, Plaintiff points to the following allegations: (1)

24   Plaintiff was employed by Defendant for nearly 24 years; (2) Plaintiff was reassured that her

25   status of continued employment would not be jeopardized or terminated; (3) Defendants

26   represented that Plaintiff would not be terminated for any reason in July 2021; and (4) Defendants

27   terminated Plaintiff for cause — namely, because she had not accessed Shopify since February 8,

28   2023 or provided meaningful work.  (*Id.* (citing ECF No. 1-2 ¶¶ 12–21, 25–31, 34, 48).)

In reply, Defendants argue Plaintiff does not allege any of Defendants' personnel policies or practices, or any industry standards created an implied "for-cause" employment contract. (ECF No. 11 at 6.)

Under California law, when an employee's term of employment is not specified in an employment contract, document, or oral agreement, the employment is considered "at-will," meaning it may be terminated by either party. *Pomeroy v. Wal-Mart Stores, Inc.*, 834 F. Supp. 2d 964, 973 (E.D. Cal. 2011); *see* Cal. Labor Code § 2922 ("An employment, having no specified term, may be terminated at the will of either party on notice to the other."). In the absence of evidence regarding the duration or term of employment, there is a statutory presumption of at-will employment, and either party may terminate the employment at any time. *Eisenberg v. Alameda Newspapers, Inc*., 74 Cal. App. 4th 1359, 1386 (1999). This presumption can only be rebutted by evidence of an express or implied agreement that termination can occur only "for cause." *Hoy v. Sears, Roebuck & Company*, 861 F. Supp. 881, 885 (N.D. Cal. 1994). The California Supreme Court has identified a number of factors that may suggest that an implied agreement exists: "the personnel policies or practices of the employer, the employee's longevity of service, actions or communications by the employer reflecting assurances of continued employment, and the practices of the industry in which the employee is engaged." *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 680 (1988).

Here, the Court finds Plaintiff does not plead sufficient facts, policies, practices, discussions, or communications between herself and Defendants that would suggest the existence of an implied agreement to limit Defendants' right to terminate Plaintiff at will. While the Court finds Plaintiff's allegation that Defendant told Plaintiff she could not be terminated for any reason persuasive (ECF No. 9 at 14.), without more, it is insufficient to establish an agreement that termination could occur only "for cause." *See Schubert v. Laird Techs., Inc*., No. 09-3703 SC, 2009 WL 3429656, at *2 (N.D. Cal. Oct. 22, 2009) ("In this context, where [defendant] was apparently attempting to persuade [p]laintiff to continue his employment during a change of ownership, a mere promise of permanent employment does not suggest anything more than continued at-will employment.") Because Plaintiff fails to plead sufficient allegations to rebut the

1    presumption that her employment was at-will, Plaintiff fails to sufficiently allege a breach of

2    contract claim.

3          Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's breach of

4    contract claim with respect to the 2021 Employment Contract with leave to amend.

5          B.    Claim Two (Breach of Implied Covenant of Good Faith and Fair Dealing)

6          Defendants argue Plaintiff's implied covenant of good faith and fair dealing claim

7    duplicates her breach of employment contract claim because it relies on the same facts giving rise

8    to her breach of contract claim.  (ECF No. 6-1 at 17–18.)  Defendants contend therefore that this

9    claim is superfluous and should be dismissed.  (*Id.*)

10          In opposition, Plaintiff argues Defendants' conduct goes beyond breaching the 2002 Oral

11    Contract and the 2021 Employment Contract and constitutes unfair dealing.  (ECF No. 9 at 15.)

12    Specifically, Plaintiff notes Defendants acted in bad faith by intentionally preventing her from

13    performing her job and then using this as grounds to terminate her employment.  (*Id.*)

14          "The covenant of good faith and fair dealing, implied by law in every contract, exists

15    merely to prevent one contracting party from unfairly frustrating the other party's right to receive

16    the benefits of the agreement actually made."  *See Digerati Holdings, LLC v. Young Money*

17    *Entm't, LLC*, 194 Cal. App. 4th 873, 885 (2011).  The covenant requires a party "to do everything

18    that the contract presupposes that the [party] will do to accomplish its purposes."  *Thrifty Payless,*

19    *Inc. v. The Americana Brand, LLC*, 218 Cal. App. 4th 1230, 1244 (2013); *Pasadena Live v. City*

20    *of Pasadena*, 114 Cal. App. 4th 1089, 1093 (2004).  Thus, "the covenant prevents a party from

21    acting in bad faith to frustrate the contract's actual benefits."  *Guz*, 24 Cal.4th at 353 n.18.

22          If a plaintiff's allegations of breach of the covenant of good faith "do not go beyond the

23    statement of a mere contract breach and, relying on the same alleged acts, simply seek the same

24    damages or other relief already claimed in a companion contract cause of action, they may be

25    disregarded as superfluous as no additional claim is actually stated."  *Bionghi v. Metro. Water*

26    *Dist.*, 70 Cal. App. 4th 1358, 1370 (1999).  That is, "where breach of an actual [contract] term is

27    alleged, a separate implied covenant claim, based on the same breach, is superfluous."  *Guz*, 24

28    Cal.4th at 327.  "[I]n most cases, a claim for breach of the implied covenant can add nothing to a

1  claim for breach of contract." *Lamke v. Sunstate Equip. Co.*, 387 F. Supp. 2d 1044, 1047 (N.D.
2  Cal. 2004).

3      Here, the Court agrees with Defendants that Plaintiff's claim for breach of the implied
4  covenant is duplicative of her claims for breach of contract. For both claims, Plaintiff alleges
5  Defendants breached the 2021 Employment Contract by terminating her employment in April
6  2023 under the false pretext that she had withdrawn from company operations after Defendants
7  removed Plaintiff's access to emails, online platforms, and job responsibilities. (ECF No. 1-2 ¶¶
8  62, 66.) Further, Plaintiff seeks the same damages for each claim – namely, special, general and
9  punitive damages, attorney's fees costs of suit, declaratory and injunctive relief, and prejudgment
10  interest. (*See* ECF No. 1-2 at 7–29.) Since Plaintiff's second claim relies on the same facts as her
11  first claim and does not seek distinct relief, her second claim is duplicative and superfluous.

12      Accordingly, the Court GRANTS Defendant's motion to dismiss Plaintiff's breach of the
13  implied covenant of good faith and fair dealing claim with leave to amend.

14                  C.      Claim Three (Breach of Fiduciary Duty)

15      Defendants contend Plaintiff's breach of fiduciary duty claim should be dismissed on two
16  grounds: (1) it fails to state a claim upon which relief can be granted; and (2) it is barred by the
17  statute of limitations. (ECF No. 6-1 at 21.) The Court will address each argument in turn.

18                          *i.      Failure to State a Claim*

19      Defendants argue while Plaintiff's breach of fiduciary claim duty purports to set forth a
20  direct claim — a claim filed by a shareholder individually for injury to their interest as a
21  shareholder — in reality, she seeks to bring a shareholder derivative claim — a claim filed on
22  behalf of the corporation for injury to the corporation for which it has failed or refused to sue.
23  (ECF No. 6-1 at 21.) Defendants contend Plaintiff's claim is a derivative claim because the
24  "gravamen" of the claim alleges injury to MD. (*Id*. at 22.) Specifically, Defendants argue
25  Plaintiff's allegations that Defendants misappropriated company assets for personal use, misstated
26  the company's value, purchased real property with company funds, misrepresented the company's
27  value on tax returns, and withheld financial information are all injuries to MD. (*Id*.) As such,
28  Defendants argue Plaintiff does not plead sufficient facts to support her breach of fiduciary duty

1   claim. (*Id.* at 22.) Defendants further contend Plaintiff does not demonstrate compliance with the

2   required pre-suit demands for a shareholder derivative claim — namely, facts indicating Plaintiff

3   made a demand on MD to act or facts demonstrating such a showing would be futile. (*Id.* at 22–

4   23.)

5   In opposition, Plaintiff argues she is seeking recovery in her individual capacity for injury

6   to herself, not to MD. (ECF No. 9 at 16.) Plaintiff further argues any pre-suit demands would be

7   futile, as there are only three shareholders and the policy underlying California Corporations

8   Code § 800 requiring pre-suit demands is of limited relevance here. (*Id.* at 18–19.)

9   Minority shareholders may bring two types of actions: (1) a direct action, filed

10  individually for injury to their personal shareholder interests; or (2) a derivative action, filed on

11  behalf of the corporation for injury to the corporation. *See Schuster v. Gardner*, 127 Cal. App.

12  4th 305, 311–12 (2005).  A claim is derivative if its primary focus is injury to the corporation or

13  its entire body of stock or property, without any distribution among individual shareholders, or if

14  it seeks to recover corporate assets or prevent asset dissipation. *Jones v. H. F. Ahmanson & Co*.,

15  1 Cal. 3d 93, 106 (1969); *Schuster*, 127 Cal. App. 4th at 313.  Majority shareholders, whether

16  acting alone or together, have a fiduciary duty to the minority and the corporation to exercise their

17  control fairly, justly, and equitably. *See Jones*, 1 Cal. 3d at 108.

18  California law does not require a plaintiff's injury to be independent of any injury to the

19  corporation. *See Smith v. Waste Mgmt., Inc*., 407 F.3d 381, 384–85 (5th Cir. 2005); *see also*

20  *Jones*, 1 Cal. 3d at 107.  Rather, California law only requires the injury be non-incidental to the

21  corporation's injury, and it is irrelevant whether the injury is unique or suffered by a substantial

22  number of shareholders. *Jones*, 1 Cal. 3d at 107 (holding a plaintiff may bring a direct suit

23  against the corporation and its majority shareholder, even though the majority's actions harmed

24  the company's value).

25  In *Jones*, which is cited by both parties, a minority stockholder, filed a class action against

26  majority shareholders of United Savings and Loan Association of California ("Association")

27  alleging the defendants formed United Financial Corporation, a holding company, and transferred

28  a control block of shares to it, excluding minority shareholders from this transaction.  1 Cal. 3d at

101. The plaintiff alleged that the defendants breached their fiduciary duty by using their control over the Association to benefit themselves at the expense of minority shareholders. *Id.* at 105. The plaintiff further alleged defendants created United Financial, made a public market for its shares, and rendered Association stock unmarketable except to United Financial. *Id.* Finally, plaintiff alleged defendants refused to purchase her Association stock at a fair price or exchange it on the same basis as the majority. *Id.* In concluding that plaintiff had standing to bring her claim in her individual capacity, the court stated, "[i]t is clear from the stipulated facts and plaintiff's allegations that she does not seek to recover on behalf of the corporation for injury done to the corporation by defendants. Although she does allege that the value of her stock has been diminished by defendants' actions, she does not contend that the diminished value reflects an injury to the corporation and resultant depreciation in value of the stock. Thus, the gravamen of her cause of action is injury to herself and other minority stockholders." *Id.*

Here, the Court similarly finds Plaintiff sufficiently alleges a direct claim for breach of fiduciary duty. Specifically, Plaintiff alleges Defendants' breaches directly injured her by failing to provide her K1 forms from 2002 to 2021, withholding distributions from her, falsely claiming she could not be an employee, and excluding her from all board meetings. (*See* ECF No. 1-2 ¶ 72.) Plaintiff's allegations clearly demonstrate Plaintiff is suing in her individual capacity because the alleged injuries are personal to *her*, not to MD. (*See id.*);

Furthermore, Defendants do not provide binding applicable authority to support their assertion that Plaintiff's alleged breaches make her suit derivative because they demonstrate injury to the corporation. (ECF No. 6-1 at 22.) Defendants also fail to offer any evidence, explanation, or support for their assertion that the suit is derivative because, if the suit were direct, it would harm other similarly situated shareholders. (*Id.*)

Accordingly, because the Court finds Plaintiff's claim is a direct claim, allegations regarding compliance with pre-suit demands are not required. *See* Cal. Corp. Code § 800(b). Therefore, Plaintiff's sufficiently pleads her claim for breach of fiduciary duty.

> ### ii.    Statute of Limitations

Defendants argue this claim is barred by a three-year statute of limitations and Plaintiff

became aware of the facts giving rise to this claim as early as 2002.  (ECF No. 6-1 at 23.)

Defendants contend the facts giving rise to this claim are the same as the facts giving rise to

Plaintiff's constructive fraud claim — namely, that Defendants (1) failed to disclose all financial

affairs of MD; (2) failed to provide Plaintiff with a K1 from 2002-2021; (3) misappropriated

MD's funds for personal use; (4) purchased real property under KelJohn Properties, LLC with

MD's funds; and (5) falsely represented on a tax return that MD only had $1 million in inventory

in 2021 when it in fact had $3 million in inventory.  (*Id.* (citing ECF No. 1-2 ¶¶ 72, 83).)

In opposition, Plaintiff asserts this claim is not time-barred because there was continuous

accrual of the statute of limitations.  (ECF No. 9 at 20.)  Plaintiff asserts, under the continuous

accrual doctrine, when an obligation or liability arises on a recurring basis, a cause of action

accrues each time a wrongful act occurs, triggering a new limitations period.  (*Id.* (citing *Aryeh v.*

*Canon Business Solutions, Inc*., 55 Cal.4th 1185, 1199 (2013)).)  Plaintiff contends a new statute

of limitations period was triggered each time Defendants failed to provide her with a K1 or made

a distribution but excluded her.  (*Id.*)  Therefore, Plaintiff argues her breach of fiduciary duty

claim is not barred by the statute of limitations.  (*Id.*)

In reply, Defendants argue the continuous accrual doctrine does not apply to Plaintiff's

breach of fiduciary duty claim because: (1) Plaintiff does not allege a continuing or recurring

obligation Defendants owed to her that would support the doctrine's application; and (2) Plaintiff

fails to allege all elements of a breach of fiduciary duty are present in each alleged breach.  (ECF

No. 11 at 9–10.)  Defendants further argue, even if the doctrine did apply, it would only allow

Plaintiff to bring a claim for discrete acts occurring within the three years preceding her suit.  (*Id.*

at 10.)  Finally, Defendants argue Plaintiff lacks standing to bring her claim for breach of

fiduciary duty based on actions committed prior to July 2021, when Plaintiff alleges she became a

minority shareholder.  (*Id.*)

As previously stated, on a motion to dismiss, "the running of the statute is apparent on the

face of the complaint" and dismissal is only proper if the defendant shows "some obvious bar to

securing relief on the face of the complaint."  *Huynh*, 465 F.3d at 997; see also *ASARCO, LLC*.,

765 F.3d at 1004.

As explained above, the Court finds Defendants fall short of showing an obvious bar to securing relief on the face of the complaint such that dismissal of Plaintiff's breach of fiduciary duty claim on the basis of an affirmative defense is warranted.  Specifically, while Defendants generally argue that Plaintiff should have been on notice of a potential breach as early as 2002, Defendants fail to articulate how or why Defendants' failure to provide Plaintiff with MD's financial records constitutes notice or provide any authority in support of its contention.

Construing the allegations in the light most favorable to Plaintiff, the Court finds Plaintiff's breach of fiduciary duty is not time-barred.  Specifically, Plaintiff alleges that in July 2021, Defendants presented Plaintiff with the Shareholder Agreement, which Plaintiff executed and effectively decreased her interest in MD by 40%.  (*Id.* ¶ 37.)  At that point, Plaintiff became a minority shareholder.  Plaintiff filed her action in May 2023, within the three-year statute of limitations.  *See* Cal. Civ. Proc. Code § 338(d).  Thus, the statute of limitations does not bar Plaintiff's breach of fiduciary duty claim.

Accordingly, the Court DENIES Defendants' motion to dismiss Plaintiff's breach of fiduciary duty claim.

### D.    Claim Four (Constructive Fraud)

Defendants contend Plaintiff's claim for constructive fraud should be dismissed on two grounds: (1) it is barred by the statute of limitations, and (2) it fails to meet the pleading standard of particularity.  (*See* ECF No. 6-1 at 18.)  As to Defendants' argument that Plaintiff's claim is barred by the statute of limitations, the parties articulate the same arguments as discussed above in section III(c)(ii).  As such, the Court will not readdress those arguments and finds Plaintiff's constructive fraud claim is not barred by the statute of limitations.

With respect to whether Plaintiff's claim for constructive fraud meets the pleading standard, Defendants argue Plaintiff fails to adequately allege three out of four of the elements of a constructive fraud claim with the particularity Rule 9(b) requires — namely, breach of a confidential relationship, reliance, or resulting damages.  (ECF No. 6-1 at 18.)

In opposition, Plaintiff argues she is not required to necessarily plead a confidential relationship but rather is required to allege either a fiduciary *or* confidential relationship and

1   alleges the former.  (ECF No. 9 at 20 (citing *Sacramento E.D.M., Inc. v. Hynes Aviation Indus.,*

2   *Inc.*, 965 F. Supp. 2d 1141, 1152 (E.D. Cal. 2013)).)  Plaintiff also argues Defendants ignore the

3   allegations within her Complaint regarding the specifics of who, when, and how the various acts

4   and omissions occurred.  (*Id*. at 21.)  Further, Plaintiff argues she alleges she relied on

5   representations made by her son to her detriment, which resulted in the loss of 40% interest in

6   MD.  (*Id*.)  Finally, Plaintiff contends she alleges she suffered other harm such as not having

7   received medical coverage, 401K contributions, or distributions.  (*Id*.)

8          "[W]hile a federal court will examine state law to determine whether the elements of fraud

9   have been [pleaded] sufficiently to state a cause of action, the Federal Rule of Civil Procedure

10   ("Rule") 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a

11   federally imposed rule."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003).

12   Even "where fraud is not a necessary element of a claim," a plaintiff may allege and rely entirely

13   on "a unified course of fraudulent conduct" as the basis of a claim.  *Id.*  In such cases, those

14   claims are "grounded in fraud" and must be pleaded to satisfy the particularity requirement of

15   Rule 9(b).  *Id.*  To comply with Rule 9(b), a plaintiff "must allege the who, what, when, where,

16   and how of the misconduct charged."  *Id.* (internal quotations and citation omitted).

17          To state a claim for constructive fraud under California law, a party must allege: (1) a

18   fiduciary or confidential relationship; (2) an act, omissions, or concealment involving a breach of

19   that duty; (3) reliance; and (4) resulting damage.  *Sacramento E.D.M., Inc. v. Hynes Aviation*

20   *Indus., Inc.*, 965 F. Supp. 2d 1141, 1152 (E.D. Cal. 2013).

21          Here, the Court evaluates only the disputed elements.  First, Plaintiff alleges a fiduciary

22   relationship existed between her and Defendants.  (ECF No. 1-2 ¶ 81.)  Second, Plaintiff alleges

23   specifics of the misconduct charged.  (*See id*.)  For example, Plaintiff alleges Defendants

24   instructed Plaintiff's son to advise her that MD had a net worth of $10,000,000 in July 2021.  (*Id*.

25   ¶¶ 37–38.)  Plaintiff alleges she relied on the representations in executing the Shareholder

26   Agreement.  (*Id*.)  Third, Further, Plaintiff alleges Defendants misrepresentation caused her to

27   suffer a loss of 40% interest in MD.  (*Id*.)  Thus, the Court finds Plaintiff pleads her allegations

28   with sufficient particularity as required by Rule 9(b).

1    Accordingly, the Court DENIES Defendants' motion to dismiss Plaintiff's constructive

2    fraud claim.

3            E.        Claims Five and Six (Intentional and Negligent Misrepresentation)

4    Defendants argue Plaintiff's claims for intentional misrepresentation and negligent

5    misrepresentation should be dismissed on three grounds: (1) the claims are barred by the

6    economic loss rule; (2) the claims are barred by the statute of limitations; and (3) the claims are

7    not properly pleaded.  (ECF No. 6-1 at 24–29.)  As to Defendants' argument that Plaintiff's

8    claims are barred by the statute of limitations, the parties articulate the same arguments as

9    discussed above in section III(c)(ii).  As such, the Court will not readdress those arguments and

10   finds Plaintiff's intentional and negligent misrepresentation claims are not barred by the statute of

11   limitations.  Thus, the Court only addresses whether Plaintiff's misrepresentations claims are

12   barred by the economic loss rule and whether Plaintiff sufficiently pleads her claims.

13                                  i.        *Economic Loss Rule*

14   Defendants contend Plaintiff's claims for negligent and intentional misrepresentation are

15   not legally cognizable because they are barred by the economic loss rule.  (ECF No. 6-1 at 24.)

16   Specifically, Defendants argue Plaintiff's claims are identical to her breach of contract claim —

17   they both allege that Defendants promised that Plaintiff would receive a 50% ownership interest

18   in MD and perpetual employment with MD and Defendant did not provide Plaintiff with these

19   benefits.  (*Id*. at 24–25.)

20   In opposition, Plaintiff argues her claims are separate and distinct from her breach of

21   contract claim.  (ECF No. 9 at 23.)  Specifically, Plaintiff argues these claims are based upon the

22   foundation that Defendants made material misrepresentations to her about the value of MD and

23   her continued right to employment for as long as she desired in order to induce her to execute the

24   Shareholder Agreement.  (*Id*. at 22.)

25   The economic loss rule is "[t]he principle that a plaintiff generally cannot recover for

26   financial harm that results from injury to the person or property of another.  Many states

27   recognize an exception to this rule when the defendant commits fraud or negligent

28   misrepresentation, or when a special relationship exists between the parties."  Economic-Loss

17

1   Rule, BLACK'S LAW DICTIONARY (10th ed. 2014); *see also Missud v. Oakland Coliseum*

2   *Joint Venture*, No. 12–02967, 2013 WL 3286193, at *18 (N.D. Cal. Jun. 27, 2013) (the economic

3   loss rule does not apply when "a contract is secured by fraudulent representations.")

4       Courts in California "have allowed intentional misrepresentation claims to proceed,

5   notwithstanding the economic loss rule." *NuCal Foods, Inc. v. Quality Egg LLC*, 918 F. Supp. 2d

6   1023, 1032–33 (E.D. Cal. 2013) (declining to apply the economic loss rule to a case alleging

7   intentional fraud and noting that "the economic loss rule is designed to limit liability in

8   commercial activities that negligently or inadvertently go awry, not to reward malefactors who

9   affirmatively misrepresent and put people at risk" (quoting *Robinson*, 34 Cal. 4th at 991 n.7)).

10      Taking Plaintiff's allegations as true — Defendants told Plaintiff if she did not sign the

11  Shareholder Agreement and agree to the employment contract, any interest she had in MD would

12  be dissolved — Defendants fraudulently induced Plaintiff into entering the Shareholder

13  Agreement, thus providing an exception to the economic loss rule. As such, the economic loss

14  rule does not bar Plaintiff's claims.

15                  *ii.      Sufficiency of the Allegations*

16      Defendants contend Plaintiff alleges that Defendants made two representations that serve

17  as the basis for her misrepresentation claims: (1) one in 2002 that she was a 50% owner of MD;

18  and (2) one in 2021 that she would retain perpetual employment with MD. (ECF No. 6-1 at 27.)

19  Defendants argue Plaintiff has not stated the elements of her claims for misrepresentation with the

20  required particularity as to either of these representations. (*Id*.) Specifically, Defendants argue

21  Plaintiff does not allege facts to suggest Defendants made the purported misrepresentations with

22  knowledge of falsity, Defendants' intent to induce Plaintiff's reliance, or her actual and justifiable

23  reliance on the alleged misrepresentations. (*Id*. at 27–28.)

24      In opposition, Plaintiff fails to address Defendants' argument that Plaintiff's claims are

25  not properly pleaded. (ECF No. 9.) While ordinarily the Court would construe a failure to do so

26  as a concession of the issue,[2] because Plaintiff has responded to some of Defendants' arguments,

27  ───────────────

28  [2]    *Women's Recovery Ctr., LLC, v. Anthem Blue Cross Life & Health Ins. Co.*, No. 8:20-cv-
    00102-JWH-ADSx, 2022 WL 757315, at *7 (C.D. Cal. Feb. 2, 2022) ("Courts in this district, as

1    it appears her failure to respond to the specific argument of the sufficiency of the allegations was

2    an oversight.  As such, the Court will address Defendants' arguments.

3        The elements of an intentional misrepresentation claim are (1) a misrepresentation, (2)

4    defendant's knowledge of falsity, (3) defendant's intent to induce Plaintiff's reliance, (4)

5    plaintiff's actual and justifiable reliance, and (5) resulting damage.  *West v. JP Morgan Chase*

6    *Bank, N.A.*, 214 Cal. App. 4th 780, 793 (2013); *Majd v. Bank of Am., N.A.*, 243 Cal. App. 4th

7    1293, 1307 (2015).  The elements of a negligent misrepresentation claim are nearly identical,

8    except the second element requires instead establishing defendant's lack of reasonable grounds

9    for believing the fact was true.  *Id.*

10       Here, upon review of the Complaint, the Court finds Plaintiff sufficiently alleges

11   Defendants' intent to induce Plaintiff's reliance and her actual and justifiable reliance on the

12   alleged misrepresentations.  Specifically, Plaintiff alleges in 2002, the night before Plaintiff was

13   scheduled to move back to New York, Defendants asked what it would take for Plaintiff to

14   continue the work she was doing for MD.  (ECF 1-2 ¶ 25.)  Plaintiff alleges she indicated she

15   would need to be paid the commission promised, Defendants would need to honor the 50/50

16   partnership agreement, and Plaintiff would need a salary increase.  (*Id.*)  In addition, Plaintiff

17   alleges, not wanting her interest in MD to be dissolved and believing that Defendants could

18   simply shut it down, she executed the Shareholder Agreement purporting to give her a 10%

19   interest in MD, acknowledged the 2021 Employment Contract, and understood that her

20   employment could not be terminated at any time for any reason.  (*Id.* ¶ 38.)  However, the Court

21   finds Plaintiff does not sufficiently plead allegations related to Defendant's knowledge of falsity

22   or Defendant's lack of reasonable grounds for believing the fact was true with respect to the

23   alleged misrepresentations.

24       Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's intentional

25   and negligent misrepresentation claims with leave to amend.

26   ///

27   _____

28   well as many other districts, have found that a failure to address an argument in opposition
     briefing constitutes a concession of that argument.")

19

**IV.    CONCLUSION**

For the foregoing reasons, the Court hereby GRANTS in part and DENIES in part Defendants' Motion to Dismiss (ECF No. 6) as follows:

1.  The Court DENIES Defendants' motion as to Claim One with respect to the 2002 Oral Contract and GRANTS Defendant's motion as to Claim One with respect to the 2021 Employment Contract with leave to amend;

2.  The Court GRANTS Defendants' motion as to Claim Two with leave to amend;

3.  The Court DENIES Defendants' motion as to Claim Three;

4.  The Court DENIES Defendants' motion as to Claim Four; and

5.  The Court GRANTS Defendants' motion as to Claims Five and Six with leave to amend.

Plaintiff may file an amended complaint — only to cure the deficiencies addressed herein — not later than thirty (30) days from the date of electronic filing of this Order. Defendants' responsive pleading is due twenty-one (21) days after Plaintiff files an amended complaint. If Plaintiff opts not to file an amended complaint, the case will proceed on the remaining claims in the Complaint, and Defendants' responsive pleading will be due not later than twenty-one (21) days from Plaintiff's deadline for filing an amended complaint.

The Court acknowledges that in the conclusion paragraph of her opposition, Plaintiff requests leave to amend her complaint to add additional claims arising under the Employee Retirement Income Security Act for breach of fiduciary duty for the exclusion from an employer defined benefit plan and for misclassification as an independent contractor and related wage and hour claims under California labor laws. Under Rule 15, a party may amend its pleading only with the opposing party's written consent or the Court's leave. Fed. R. Civ. P. 15(a)(2). Under Rule 16, a party seeking the Court's leave must show "good cause" for amendment. Fed. R. Civ. P. 16(b)(4). Plaintiff's request is devoid of any such showing and therefore the Court DENIES Plaintiff's request for leave to amend to add new claims.

//

//

IT IS SO ORDERED.

Date: March 26, 2025

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE